Joshua Wurtzel
Partner

jwurtzel@schlamstone.com
schlamstone.com

**SCHLAM STONE & DOLAN LLP**

26 Broadway, New York, NY 10004
Main: 212 344-5400     Fax: 212 344-7677
Direct: 212 612-1226   Mobile: 516 528-9944

December 21, 2022

## MEMO ENDORSED

**BY ECF**

The Honorable Edgardo Ramos
United States District Court
Southern District of New York
40 Foley Square, Courtroom 619
New York, New York 10007

> Defendants Kamal Malik, Money Tree Capital Markets LLC (NY), and Money Tree Capital Markets LLC (DE) are directed to respond by December 23, 2022.  SO ORDERED.
>
> _____
> Edgardo Ramos, U.S.D.J.
> Dated: December 21, 2022
> New York, New York

Re:     *Money Tree Capital Funding, LLC v. Money Tree Capital Markets, LLC, et al.*,
         Case No. 22-cv-10084-ER

Dear Judge Ramos:

This firm represents Plaintiff Money Tree Capital Funding, LLC ("Lender") in this action.

In accordance with Rule 2.A.i of this Court's Individual Practices and Local Rule 37.2, and further to this Court's directive at the conclusion of the December 2, 2022 hearing on Lender's motion for a preliminary injunction, we write to request that this Court enter an order (i) directing Defendants Kamal Malik ("Malik"), Money Tree Capital Markets LLC (NY) ("MTCM-NY"), and Money Tree Capital Markets LLC (DE) ("MTCM-DE," and together with MTCM-NY, "Borrower") to produce a very narrow universe of expedited discovery, described below, by the end of this calendar year; and (ii) scheduling an initial pretrial conference under Fed. R. Civ. P. 16(b) so that regular discovery may also begin promptly. In accordance with Local Rule 37.2, we request that this Court hold an informal conference to discuss these requests.

**This Court Should Order Malik and Borrower to Produce Documents Concerning the**
**Outstanding Mortgage Loans and Their Proceeds By the End of This Calendar Year**

During the December 2 hearing, this Court stated: "If the parties are willing or agree to a particular schedule, [] **I am happy to entertain an application for expedited discovery so that the plaintiffs can get some idea of what the status of Money Tree Capital Markets is at this juncture.**" Tr. at 48:8–11 (copy attached as Exhibit A). And this Court further implored Malik and Borrower's counsel (this counsel originally stated that they represented only Malik, but now represent Borrower as well) to cooperate in working out a schedule for this expedited discovery, stating: "**I urge you, Mr. Pioch, to try to find a way to agree with Mr. Wurtzel on an expedited discovery schedule.**" *Id.* at 48:13–15.

The Honorable Edgardo Ramos
December 21, 2022
Page 2 of 4

Despite our near-daily reach outs between December 2 and 8, Malik and Borrower's counsel refused to hold a meet and confer with us until December 12. Following some written back and forth before this meet and confer, and after Borrower and Malik's counsel admitted that, contrary to Malik's many representations to Lender, **all 23 Outstanding Mortgage Loans have been sold**, we demanded that Malik and Borrower produce: (i) documents sufficient to show when, to whom, and for how much each of the 23 "Outstanding Mortgage Loans" (as defined in this Court's order to show cause (Dkt. No. 34)) was sold; and (ii) statements of Borrower's bank accounts into which the proceeds of these sales went, and documents (including other bank statements) sufficient to show where these proceeds went if they were transferred out of Borrower's accounts (collectively, the "**Outstanding Mortgage Loans Expedited Discovery**"). A copy of this email correspondence is attached as Exhibit B.

During the December 12 meet and confer, Malik and Borrower's counsel agreed to produce, by the end of this calendar year, documents responsive to category (i) above; and concerning category (ii) above, they refused to produce bank statements, but agreed to produce, also by the end of this calendar year, a chart (broken up by categories of use of the money) showing what had happened to the $10,563,345.06 that Borrower took and has failed to repay and supporting document(s) for each line item on this chart.

But Malik and Borrower's counsel insisted that they would produce these documents only if we also produced, among other jurisdictional discovery, New York State "tax documents" for all three members of Lender.

In response, we explained that we were willing to produce, as part of expedited discovery, documents showing that Keith Stein—the sole individual whose citizenship Malik challenged in response to Lender's motion for a preliminary injunction (Dkt. No. 41 at 9)—is a citizen of Connecticut, including (i) documents showing the sale of Mr. Stein's New York City home, (ii) documents showing the lease of Mr. Stein's first home in Connecticut, (iii) documents showing the purchase of Mr. Stein's current, permanent home in Connecticut, (iv) documents showing Mr. Stein's voter registration in Connecticut, (v) Mr. Stein's Connecticut driver's license and vehicle registration, and (vi) documents showing that Mr. Stein uses his Fire Island vacation home only seasonally (collectively, the "**Stein Expedited Jurisdictional Discovery**").

But Malik and Borrower's counsel continued to insist that we **also** produce jurisdictional discovery, including tax documents, for Ira Saferstein (another member of Lender). We then asked Malik and Borrower's counsel what basis they had for believing that Mr. Saferstein was not a citizen of Florida, given that this was the first time Malik or Borrower raised any challenge to Mr. Saferstein's citizenship. In response, however, Malik and Borrower's

The Honorable Edgardo Ramos
December 21, 2022
Page 3 of 4

counsel responded only that they "know" that Mr. Saferstein lives in New York, in part
because Mr. Saferstein "can't go two days without eating Chinese food below 108th Street."
And despite our further questioning, Malik and Borrower's counsel refused to provide any
factual support for their claims, and insisted that Mr. Saferstein was a citizen of both Florida
and New York—which cannot be the case. *See McElroy v. Gemark Alloy Ref. Corp.*, 592 F.
Supp. 2d 508, 510 n.1 (S.D.N.Y. 2008) ("For diversity purposes, citizenship depends upon
domicile, not residence. An individual can have more than one state of residence, but only one
state of domicile.")

Given Malik and Borrower's counsel's failure to identify any facts (let alone evidence)
showing that Mr. Saferstein is not a citizen of Florida, we declined to indulge Malik and
Borrower's efforts—presumably undertaken for some perceived strategic advantage—to
create a side show related to Mr. Saferstein. And though we offered to provide the Stein
Expedited Jurisdictional Discovery, Malik and Borrower's counsel said that, because we did
not accede to their unsupported demands for jurisdictional discovery about Mr. Saferstein as
well, they would not produce **any** of the jurisdictional discovery they had conditionally
agreed to produce.

This type of tit-for-tat litigation, especially in the context of expedited discovery on which this
Court strongly encouraged—if not directed—the parties to agree, is improper, and merely an
attempt to delay and obfuscate. Thus, given Malik and Borrower's refusal to cooperate, we
request that this Court order Malik and Borrower to produce the Outstanding Mortgage Loans
Expedited Discovery (described above) by the end of this calendar year. And we will
similarly commit to producing the Stein Expedited Jurisdictional Discovery (also described
above) by the end of this calendar year as well. To the extent the Court requires it, we would
also be willing to submit a sworn declaration from Mr. Saferstein stating that he is domiciled
in, and thus a citizen of, Florida.

For further context, this expedited discovery is even more critical now, given that Malik and
Borrower's counsel have told us that approximately **$4 million** of the $10,563,345.06
Borrower took from Lender has been used on "overhead." This claim, however, is incredible,
given that Borrower previously represented to Lender that its overhead, exclusive of debt
service, was under $1 million per year. And so this means that, in the last six months,
Borrower's overhead has either increased by **eight times**, or Borrower and Malik have been
secreting millions of dollars of Lender's money to pay for Malik and his family's expenses
(including a new home or homes that we understand Malik bought in his wife's name) and
losses in Malik's other mortgage-lending businesses (unrelated to Borrower).

The Honorable Edgardo Ramos
December 21, 2022
Page 4 of 4

Malik and Borrower have also repeatedly misled Lender concerning how much of the proceeds from the 23 Outstanding Mortgage Loans are left—initially telling Lender that $8.5 million in loans and cash were available, and then later telling Lender's counsel (through their own counsel) that only $6.5 million was left. As this Court recognized during the December 2 hearing, Lender is entitled to know what Borrower and Malik have done with its money.

**This Court Should Schedule a Conference Under Fed. R. Civ. P. 16(b)**

Under Fed. R. Civ. P. 16(b)(2), absent good cause, the Court must enter a scheduling order within the earlier of "90 days after any defendant has been served with the complaint" or "60 days after any defendant has appeared."

Defendants Global Bank and Kevin Yu appeared, through counsel, on December 2, 2022—making the deadline for a scheduling order January 31, 2023. We thus request that the Court schedule a Rule 16(b) conference for the first half or middle of January 2023 so the parties can promptly hold a Rule 26(f) conference and begin regular discovery in this action.

Respectfully,

/s/ Joshua Wurtzel
Joshua Wurtzel

cc:     All counsel of record (by ECF)